1  DANIEL G. BOGDEN
   United States Attorney
2  KATHRYN NEWMAN
   Assistant United States Attorney
3  Nevada Bar No. 13733
   501 Las Vegas Blvd. South, Suite 11000
4  Las Vegas, Nevada  89101
   (702) 388-6336 (Telephone)
5  (702) 388-6418 (Fax)
   kathryn.newman@usdoj.gov
6
   Counsel for Plaintiff United States
7

8            UNITED STATES DISTRICT COURT
9              DISTRICT OF NEVADA
                    -oOo-
10

11  United States of America,              )
                                           )   Case No.: 2:16-cr-228-JAD-GWF
12          Plaintiff,                      )
                                           )
13      vs.                                 )   Plea Memorandum
                                           )
14  Brian Vanderburgh,                      )
                                           )
15          Defendant.                      )
                                           )
16

17      Plaintiff United States of America, by and through Daniel G. Bogden, United States

18  Attorney, and Kathryn C. Newman, Assistant United States Attorney, defendant Brian

19  Vanderburgh, and his attorney, Michael Miceli, Esq., submit this Plea Agreement under Fed. R.

20  Crim. P. 11(c)(1)(A) and (B).

21  I.      SCOPE OF AGREEMENT

22      The parties to this Plea Agreement are the United States of America and Brian

23  Vanderburgh (the defendant).  This Plea Agreement binds the defendant and the United States

24

1  Attorney's Office for the District of Nevada.  It does not bind any other prosecuting,

2  administrative, or regulatory authority, the United States Probation Office, or the Court.

3          The Plea Agreement sets forth the parties' agreement regarding criminal charges

4  referenced in the Plea Agreement and applicable sentences, fines and restitution.  It does not

5  control or prohibit the United States or any agency or third party from seeking any other civil or

6  administrative remedies directly or indirectly against the defendant.

7  **II.        DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS**

8          A.        <u>Guilty Plea</u>.  The defendant knowingly and voluntarily agrees to plead guilty to a

9  Count One of the Indictment charging him with Conspiracy to Commit Wire Fraud in violation

10 of Title 18, United States Code, Section 1349.

11         B.        <u>Waiver of Trial Rights</u>.  The defendant acknowledges that he has been advised

12 and understands that by entering a plea of guilty he is waiving -- that is, giving up -- certain

13 rights guaranteed to all defendants by the laws and the Constitution of the United States.

14 Specifically, the defendant is giving up:

15               1.        The right to proceed to trial by jury on all charges, or to a trial by a judge

16 if the defendant and the United States both agree;

17               2.        The right to confront the witnesses against the defendant at such a trial,

18 and to cross-examine them;

19               3.        The right to remain silent at such a trial, with assurance that his silence

20 could not be used against him in any way;

21               4.        The right to testify in his own defense at such a trial if he so chooses;

22               5.        The right to compel witnesses to appear at such a trial and testify in the

23 defendant's behalf; and

24

6.  The right to have the assistance of an attorney at all stages of such proceedings.

C.  <u>Withdrawal of Guilty Plea</u>.  The defendant will not seek to withdraw his guilty plea after he has entered it in court.

D.  <u>Additional Charges</u>.  The United States agrees not to bring any additional charges against the defendant arising out of the investigation in the District of Nevada which culminated in this Plea Agreement and based on conduct known to the United States.  The United States will move to dismiss the remaining counts of the indictment at the time of sentencing.

**III.  ELEMENTS OF THE OFFENSES**

The elements of Conspiracy to Commit Wire Fraud under 18 U.S.C. § 1349 are:

1.  There was an agreement between two or more persons to commit at least one crime as charged in the indictment, here, Wire Fraud; and

2.  The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it;

Fed. Crim. Jury Instructions of the Ninth Circuit § 8.20 (2015 ed.).

The elements of Wire Fraud under 18 U.S.C. § 1343 are:

1.  The defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

2.  The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3.  The defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and

3

1   4.      The defendant used, or caused to be used, a wire communication to carry out or

2   attempt to carry out an essential part of the scheme.

3          Fed. Crim. Jury Instructions of the Ninth Circuit § 8.124 (2014 ed.).

4   **IV.     FACTS SUPPORTING GUILTY PLEA**

5          A.      The defendant will plead guilty because he is, in fact and under the law, guilty of

6   the crimes charged.

7          B.      The defendant further acknowledges that his admissions and declarations of fact set

8   forth below satisfy every element of the charged offenses.

9          C.      The defendant waives any potential future claim that the facts he admitted in this

10  Plea Agreement were insufficient to satisfy the elements of the charged offenses.

11         D.      The defendant admits and declares under penalty of perjury that the facts set forth

12  below are true and correct:

13         1.      From in or about November 2010, to in or about June 2011, in the States and Federal

14  District of Nevada, Brian Vanderburgh, did knowingly and willfully combine, conspire and agree

15  with others to transmit and cause to be transmitted by means of wire communications in interstate

16  commerce documents and information for purposes of executing a scheme and artifice to defraud

17  and for obtaining money and property by means of materially false and fraudulent pretenses,

18  representations, and promises, in violation of Title 18, United States Code, Section 1343.

19         2.      The objective of the conspiracy and scheme was for defendant and his

20  coconspirators to obtain money and property from Acquest Vegas, LLC, for construction services

21  that were not performed.

22         3.      The manner and means by which the objective of the conspiracy were accomplished

23  include, but were not limited to, the following:

24

4

1          a.      The United States sought to build an outpatient clinic in Las Vegas, Nevada

2     to service veterans. Acquest Vegas, LLC, a developer, won the contract.  Acquest hired the

3     defendant, Brian Vanderburgh, to act as the Project Manager on the project. Acquest

4     subctrontacted the construction to Recreational Development Company ("RDC"), who acted as

5     the General Contractor on the project. RDC and Acquest had a "cost plus" fee arrangement for

6     RDC's services.

7          b.      RDC hired subcontractors to perform work on the contract. The subcontractors

8     included Top Notch Services, LLC and Williams Waterproofing. Periodically, RDC would

9     aggregate the invoices it received and submit a Pay Application to Acquest, seeking

10    reimbursement for work completed on the project.

11         b.      The defendant's co-conspirator, Jeffrey Whittle, was a Managing Member of RDC.

12         c.      The defendant, as the Project Manager for Acquest, was responsible for monitoring

13    progress of construction and ensuring that the work certified as complete on the pay applications

14    was in fact complete.  The defendant controlled a company called VDB Consulting and was the

15    sole authorized signor on VDB Consulting's bank account.

16         d.      The defendant and his co-conspirators created and caused to be created false and

17    fraudulent invoices from subcontractors Top Notch and Williams Waterproofing, which sought

18    payment for work that had not in fact been done on the project. The fraudulent invoices were

19    bundled with other, legitimate invoices and submitted for payment to Acquest. The defendant's

20    co-conspirator, Jeffrey Whittle, signed the Pay Applications that included the fraudulent invoices

21    or caused the Pay Applications to be signed.  The defendant authorized their payment on behalf of

22    Acquest by sending an interstate email from his offices in Nevada to Acquest's offices in New

23    York.

24

5

1          e.      As a result of the fraudulent invoices and the authorizations and certifications by

2 the co-conspirators, Acquest issued payment on the invoices. The payments went to an escrow

3 company, Nevada Construction Services (NCS) by interstate wire from Acquest's bank account at

4 Wells Fargo to NCS's account with MetLife.

5          f.      NCS then wrote checks to RDC for payment on the invoices. RDC deposited the

6 checks and co-conspirators Whittle signed the checks to VDB Consulting Services or caused them

7 to be signed. The defendant deposited the funds in his VDB Consulting account for his own use.

8 On at least eight different occasions the amount of the check written by RDC to VDB Consulting

9 was the exact same amount as the fraudulent invoices submitted to Acquest and authorized by the

10 defendant.

11          g.      The defendants created $151,445 in fraudulent invoices from Top Notch and

12 $129,620 in fraudulent invoices from Williams Waterproofing. Before the fraud was discovered

13 by Acquest, RDC disclosed the fraudulent Top Notch invoices and returned the fraudulently

14 acquired proceeds through off-sets to the contract. RDC and the co-conspirators never disclosed

15 or returned the $129,620 fraudulently obtained through falsified Williams Waterproofing invoices.

16         4.      In all of the aforementioned actions, defendant Brian Vanderburgh acted with the

17 intent to defraud and with willful blindness regarding the falsity of the submitted invoices.

18 **V.    COLLATERAL USE OF FACTUAL ADMISSIONS**

19         The facts set forth in Section IV of this Plea Agreement shall be admissible against the

20 defendant under Fed. R. Evid. 801(d)(2)(A) at sentencing for any purpose. If the defendant does

21 not plead guilty or withdraws his guilty plea, the facts set forth in Section IV of this Plea

22 Agreement shall be admissible at any proceeding, including a trial, for impeaching or rebutting

23 any evidence, argument or representation offered by or on the defendant's behalf. The defendant

24

6

1  expressly waives all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the use

2  of the facts set forth in Section IV of this Plea Agreement.

3  **VI.    APPLICATION OF SENTENCING GUIDELINES PROVISIONS**

4        A.      Discretionary Nature of Sentencing Guidelines.  The defendant acknowledges that

5  the Court must consider the United States Sentencing Guidelines ("USSG" or "Sentencing

6  Guidelines") in determining the defendant's sentence, but that the Sentencing Guidelines are

7  advisory, not mandatory, and the Court has discretion to impose any reasonable sentence up to

8  the maximum term of imprisonment permitted by statute.

9        B.      Offense Level Calculations.  The parties stipulate to the following calculation of

10 the defendant's offense level under the Sentencing Guidelines, acknowledge that these

11 stipulations do not bind the Court, and agree that they will not seek to apply any other specific

12 offense characteristics, enhancements or reductions:

13            1.     Count 1: Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349

14            Base Offense Level (USSG § 2B1.1(a)):                          7
             Loss of $95,000 to $150,000 (USSG § 2B1.1(b)(1)(E)):          8
15            Acceptance (USSG § 3E1.1(a)):                                 -2
             **Total Adjusted Offense Level**                             **13**

16

17        The defendant acknowledges that the statutory maximum sentence and any statutory

18 minimum sentence limit the Court's discretion in determining the defendant's sentence

19 notwithstanding any applicable Sentencing Guidelines provisions.

20        C.      Reduction of Offense Level for Acceptance of Responsibility.  Under USSG

21 §3E1.1(a), the United States will recommend that the defendant receive a two-level downward

22 adjustment for acceptance of responsibility unless he (a) fails to truthfully admit facts

23 establishing a factual basis for the guilty plea when he enters the plea; (b) fails to truthfully admit

24 facts establishing the amount of restitution owed when he enters his guilty plea; (c) provides

7

1  false or misleading information to the United States, the Court, Pretrial Services, or the Probation

2  Office; (d) denies involvement in the offense or provides conflicting statements regarding his

3  involvement or falsely denies or frivolously contests conduct relevant to the offense; (e) attempts

4  to withdraw his guilty plea; (g) commits or attempts to commit any crime; (f) fails to appear in

5  court; or (i) violates the conditions of pretrial release.

6          These Sentencing Guidelines provisions, if applied, will result in a total offense level of

7  13.

8          D.      Criminal History Category.  The defendant acknowledges that the Court may base

9  his sentence in part on the defendant's criminal record or criminal history.  The Court will

10  determine the defendant's Criminal History Category under the Sentencing Guidelines.

11          E.      Relevant Conduct.  The Court may consider any counts dismissed under this Plea

12  Agreement and all other relevant conduct, whether charged or uncharged, in determining the

13  applicable Sentencing Guidelines range and whether to depart from that range.

14          F.      Additional Sentencing Information.  The stipulated Sentencing Guidelines

15  calculations are based on information now known to the parties.  The parties may provide

16  additional information to the United States Probation Office and the Court regarding the nature,

17  scope, and extent of the defendant's criminal conduct and any aggravating or mitigating facts or

18  circumstances.  Good faith efforts to provide truthful information or to correct factual

19  misstatements shall not be grounds for the defendant to withdraw his guilty plea.

20          The defendant acknowledges that the United States Probation Office may calculate the

21  Sentencing Guidelines differently and may rely on additional information it obtains through its

22  investigation.  The defendant also acknowledges that the Court may rely on this and other

23  additional information as it calculates the Sentencing Guidelines range and makes other

24

8

1  sentencing determinations, and the Court's reliance on such information shall not be grounds for

2  the defendant to withdraw his guilty plea.

3        **VII.**   **APPLICATION OF SENTENCING STATUTES**

4        **A.**    <u>Maximum Penalty</u>.  The maximum penalty for Conspiracy to Commit Wire Fraud

5  under 18 U.S.C. § 1349 is a 20-year prison sentence, a fine of $1,000,000, or both.

6        **B.**    <u>Factors Under 18 U.S.C. § 3553</u>.  The Court must consider the factors set forth in

7  18 U.S.C. § 3553(a) in determining the defendant's sentence.  However, the statutory maximum

8  sentence and any statutory minimum sentence limit the Court's discretion in determining the

9  defendant's sentence.

10        **C.**    <u>Parole Abolished</u>.  The defendant acknowledges that his prison sentence cannot

11  be shortened by early release on parole because parole has been abolished.

12        **D.**    <u>Supervised Release</u>.  In addition to imprisonment and a fine, the defendant will be

13  subject to a term of supervised release not to exceed five years. 18 U.S.C. § 3583(b). Supervised

14  release is a period of time after release from prison during which the defendant will be subject to

15  various restrictions and requirements.  If the defendant violates any condition of supervised

16  release, the Court may order the defendant's return to prison for all or part of the term of

17  supervised release, which could result in the defendant serving a total term of imprisonment

18  greater than the statutory maximum prison sentence of twenty-five years.

19        **E.**    <u>Special Assessment</u>.  The defendant will pay a $100.00 special assessment per

20  count at the time of sentencing.

21  **VIII.**  **POSITIONS REGARDING SENTENCE**

22        The parties will jointly recommend a below-guidelines sentence of a term of probation

23  for five years. The United States will not seek a fine. The defendant acknowledges that the Court

24  does not have to grant a downward departure based on the defendant's substantial assistance to

9

1  the United States, even if the United States chooses to file a motion pursuant to 18 U.S.C. §

2  3553(e)(1), USSG § 5K1.1, or Fed. R. Crim. P. 35. This Plea Agreement does not require the

3  United States to file any pre- or post-sentence downward departure motion under USSG § 5K1.1

4  or Fed. R. Crim. P. 35.  The United States reserves its right to defend any lawfully imposed

5  sentence on appeal or in any post-conviction litigation.

6  **IX.    RESTITUTION**

7          In exchange for the benefits received under this Plea Agreement, the defendant agrees to

8  make full restitution in the amount of $129,620, to be joint and several with any restitution order

9  to his co-defendant. The defendant cannot discharge this restitution obligation through bankruptcy

10  proceedings.

11  **X.     FINANCIAL INFORMATION AND DISPOSITION OF ASSETS**

12          Before or after sentencing, upon request by the Court, the United States, or the Probation

13  Office, the defendant will provide accurate and complete financial information, submit sworn

14  statements, and/or give depositions under oath concerning his assets and his ability to pay.  The

15  defendant will surrender assets he obtained directly or indirectly as a result of his crimes, and

16  will release funds and property under his control in order to pay any fine or restitution ordered by

17  the Court.

18  **XI.    THE DEFENDANT'S ACKNOWLEDGMENTS AND WAIVERS**

19          A.    <u>Plea Agreement and Decision to Plead Guilty</u>.  The defendant acknowledges that:

20                (1)    He has read this Plea Agreement and understands its terms and conditions;

21                (2)    He has had adequate time to discuss this case, the evidence, and this Plea

22  Agreement with his attorney;

23                (3)    He has discussed the terms of this Plea Agreement with his attorney;

24

1    (4)    The representations contained in this Plea Agreement are true and correct,

2  including the facts set forth in Section IV; and

3    (5)    He was not under the influence of any alcohol, drug, or medicine that

4  would impair his ability to understand the Agreement when he considered signing this Plea

5  Agreement and when he signed it.

6    The defendant understands that he alone decides whether to plead guilty or go to trial,

7  and acknowledges that he has decided to enter his guilty plea knowing of the charges brought

8  against him, his possible defenses, and the benefits and possible detriments of proceeding to trial.

9  The defendant also acknowledges that he decided to plead guilty voluntarily and that no one

10  coerced or threatened him to enter into this Plea Agreement.

11    B.    <u>Waiver of Appeal and Post-Conviction Proceedings</u>.  The defendant knowingly

12  and expressly waives: (a) the right to appeal any sentence imposed within or below the

13  applicable Sentencing Guideline range as determined by the Court; (b) the right to appeal the

14  manner in which the Court determined that sentence on the grounds set forth in 18 U.S.C. §

15  3742; and (c) the right to appeal any other aspect of the conviction or sentence and any order of

16  restitution.

17    The defendant also knowingly and expressly waives all collateral challenges, including

18  any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the procedure by which the

19  Court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective

20  assistance of counsel.

21    The defendant reserves only the right to appeal any portion of the sentence that is an

22  upward departure from the Sentencing Guidelines range determined by the Court.

23    The defendant acknowledges that the United States is not obligated or required to

24  preserve any evidence obtained in the investigation of this case.

11

1        C.    Removal/Deportation Consequences.  The defendant understands and

2 acknowledges that if he is not a United States citizen, then it is highly probable that he will be

3 permanently removed (deported) from the United States as a consequence of pleading guilty

4 under the terms of this Plea Agreement.  The defendant has also been advised if his conviction is

5 for an offense described in 8 U.S.C. § 1101(a)(43), he will be deported and removed from the

6 United States and will not be allowed to return to the United States at any time in the future.  The

7 defendant desires to plead guilty regardless of any immigration consequences that may result

8 from his guilty plea, even if the consequence is automatic removal from the United States with

9 no possibility of returning. The defendant acknowledges that he has specifically discussed these

10 removal/deportation consequences with his attorney.

11 **XII.    ADDITIONAL ACKNOWLEDGMENTS**

12        This Plea Agreement resulted from an arms-length negotiation in which both parties

13 bargained for and received valuable benefits in exchange for valuable concessions.  It constitutes

14 the entire agreement negotiated and agreed to by the parties.  No promises, agreements or

15 conditions other than those set forth in this agreement have been made or implied by the

16 defendant, the defendant's attorney, or the United States, and no additional promises, agreements

17

18

19

20

21

22

23

24

1  or conditions shall have any force or effect unless set forth in writing and signed by all parties or

2  confirmed on the record before the Court.

3                                        DANIEL G. BOGDEN,
                                         United States Attorney
4

5  DATE 2-27-17

6                                        KATHRYN C. NEWMAN
                                         Assistant United States Attorney
7

8  DATE 2-27-17

9                                        MICHEAL MICELI, ESQ.
                                         Counsel for Defendant Brian Vanderburgh
10

11  DATE 2-27-17

12                                       BRIAN VANDERBURGH
                                         Defendant
13

14

15

16

17

18

19

20

21

22

23

24

                                         13